## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **LUCIA ESMERALDA OPORTO,** *et al.*, | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-110-KC** |
| | § | |
| **CITY OF EL PASO,** *et al.*, | § | |
| | § | |
| **Defendants**. | § | |

## <u>ORDER</u>

On this day, the Court considered the Motion to Dismiss filed by Defendant City of El Paso, Texas ("City") (Doc. No. 19) as well as Defendants Gregory Allen ("Allen") and Richard Wiles's ("Wiles's") Corrected Motion to Dismiss (Doc. No. 22). For the reasons set forth below the City's Motion is **GRANTED** in part and **DENIED** in part, while Allen and Wiles's Corrected Motion is **DENIED** as moot.

## I.       BACKGROUND

### A.       Parties

Plaintiff Lucia Esmeralda Oporto ("Oporto"), widow of John Dalton Martinez ("Martinez") and personal representative of his estate, is a resident of Aurora, Colorado. Pls.' Compl. ¶ 2. (Doc. No. 1). Plaintiffs Angel Jose Martinez and Elijah Isaiah Martinez are other survivors of Martinez. *Id.* Defendant City of El Paso, Texas ("City") is a municipality. Pls.' Compl. ¶ 3. The City operates the El Paso Police Department which employed Wiles, Allen, Marco Spalloni, Octavio Jauregui, Rodolfo Moreno ("Moreno"), and Edwin Mayorga ("Mayorga"). Pls.' Compl. ¶ 3. Wiles is a resident of El Paso, Texas, and he is the former chief

of police of the El Paso Police Department.  Pls.' Compl. ¶ 4.  Allen is a resident of El Paso,

Texas, and he was the acting and/or interim chief of police of the El Paso Police Department at

the time of Martinez's death.  Pls.' Compl. ¶ 5.  Moreno and Mayorga are residents of El Paso,

Texas, and were officers at the El Paso Police Department at that time.   Pls.' Compl. ¶¶ 8, 9.

**B.     Facts**

The following facts are derived from Plaintiffs' Complaint.  For present purposes, all

well-pleaded factual allegations in Plaintiffs' Complaint are accepted as true and construed in the

light most favorable to Plaintiffs.  *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

On March 29, 2008, police officers Moreno and Mayorga were assigned to a "beer run"

operation at a 7-Eleven convenience store in El Paso, Texas.[1]  Pls.' Compl. ¶ 18.  Both officers

were in plain clothes, not their uniforms, and were driving an unmarked vehicle.  Pls.' Compl. ¶

18.  They parked the vehicle to observe the 7-Eleven and the nearby Lucky's store.  Pls.' Compl.

¶ 20.  While conducting surveillance, the officers observed two individuals who appeared to be

fighting, and the officers drove towards the scene to investigate further.  Pls.' Compl. ¶ 21.

While driving, the officers heard what they believed to be gunshots, and Mayorga observed two

males running towards Lucky's, one of whom he believed to be carrying a handgun.  Pls.' Compl.

¶¶ 22, 23.  The officers exited their vehicle and ran toward Lucky's with their weapons drawn.

Pls.' Compl. ¶ 24.  Moreno requested back-up and then both officers entered the store with their

weapons drawn.  Pls.' Compl. ¶¶ 24, 25.  Upon entering the store, the officers claim to have

---

[1]     Plaintiffs do not define "beer run" in the pleadings. However, other cases define a "beer run" as a plan to "grab beer and leave without paying for it."  *See Dickson v. Dretke*, No. 2:01-CV-95, 2005 U.S. Dist. LEXIS 3005, at *10 (N.D. Tex. Mar. 1, 2005).  In the instant case, the officers were thus apparently conducting surveillance in an attempt to detect and thwart such thefts.

yelled "Police, Police" although witnesses at the scene stated that the officers never identified themselves as police officers.  Pls.' Compl. ¶ 26.  Inside the store, Mayorga grabbed a woman who had entered before him and pulled her back toward Moreno.  Pls.' Compl. ¶ 27.  The officers then continued into the store and shot and killed Martinez.  Pls.' Compl. ¶¶ 28, 29.

### C.      Procedural Posture

On March 24, 2010, Plaintiffs filed their Complaint seeking relief for violations of Decedent's Fourth and Fourteenth Amendment rights.  Pls.' Compl. ¶ 12.  Plaintiffs allege four causes of action under 42 U.S.C. §1983, all for violations of the Fourth and Fourteenth Amendments.  First, Plaintiffs allege Defendants, "in shooting and killing [] Decedent, without justification, violated Decedent's right to be free from the use of unnecessary, unreasonable and excessive police force and constituted an unlawful and unreasonable seizure of his person."  Pls.' Compl. ¶ 40.  Second, Plaintiffs allege Defendants used constitutionally deficient tactics at the scene that amounted to the unlawful seizure and death of Decedent.  Pls.' Compl. ¶ 45.  Plaintiffs allege the City of El Paso has a custom, policy and practice of insufficiently training officers in the use of deadly force and list a series of cases from 1993 to 2008 allegedly showing the Police Department's history of using excessive force.  Pls.' Compl. ¶ 47(A)-(T).  Third, Plaintiffs allege conscious deliberate indifference by the City through inadequate training, supervision and discipline of El Paso Police Department officers.  Pls.' Compl. ¶ 53, 57.  Fourth, Plaintiffs allege Wiles and Allen, as police chiefs, failed to supervise and train El Paso Police Department officers in the use of deadly force which amounted to gross negligence or deliberate indifference.  Pls.' Compl. ¶ 61.  Plaintiffs seek compensatory damages, attorneys' fees and costs.  Pls.' Compl. ¶¶ 67-70.

On May 3, 2010, the City filed a Motion to Dismiss ("City's Motion") (Doc. No. 19). The same day Wiles and Allen filed a Motion to Dismiss (Doc. No. 20) and a Corrected Motion to Dismiss ("Wiles & Allen Motion") (Doc. Nos. 22).  On June 22, 2010, Plaintiffs filed their Response to the above-noted Motions to Dismiss ("Plaintiffs' Response") (Doc. No. 31).  On July 1, 2010, Defendants City, Wiles and Allen filed their Reply to Plaintiffs' Response ("Defendants' Reply") (Doc. No. 32).  On July 13, 2010, Plaintiffs and Defendants filed a Joint Motion to Dismiss Wiles and Allen ("Joint Motion") (Doc. No. 33).  On July 20, 2010, the Court granted the Joint Motion (Doc. No. 34) and dismissed the claims against Wiles and Allen, rendering the outstanding Wiles & Allen Motion moot.

## II.    DISCUSSION

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002)*; Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("But a court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Though a complaint need not contain "detailed" factual allegations, still the "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 569. Nevertheless, "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.     Plaintiffs sufficiently plead a § 1983 claim against the City**

The City argues that Plaintiffs' § 1983 claims against the City fail because Plaintiffs do not adequately allege an improper official policy or widespread custom. City's Mot. ¶ 10. The City further argues that Plaintiffs fail to state how any city policy or custom directly caused Plaintiffs' injuries and fail to allege any facts of deliberate indifference. City's Mot. ¶¶ 10, 11. The Court, however, finds these arguments unconvincing.

**1.     Elements of a § 1983 claim**

To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). It is well-established that a municipality is not liable under § 1983 on the theory of respondeat superior. *Monell*, 436 U.S. at 694. Cities face § 1983 liability only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

Official policy or custom can be established in several ways.  An official policy may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policymaker.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  A policy may also arise from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Id*. Finally, a policy or custom may exist as the basis for § 1983 liability, especially in failure to train cases, where the need to take some action to control local governmental agents is so obvious, and the inadequacy of existing training so likely to result in the violation of constitutional rights, that a municipality's failure to train its employees demonstrates a "deliberate indifference" to the rights of its inhabitants.  *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989).  Plaintiffs allege that there is a policy under both the widespread practice theory and the inadequacy of training theory.  Pls.' Compl. ¶¶ 46, 47.

A policy is promulgated by the municipal policymaker when it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  "Courts have consistently found that chiefs of police are official law enforcement policymakers for the purposes of municipal liability under § 1983."  *Kincheloe v. Caudle*, No. A-09-CV-10-LY, 2009 U.S. Dist. LEXIS 96371, at *56 (W.D. Tex. Oct. 16, 2009) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1279 n.45 (5th Cir. 1992) (finding that the chief of police is the principal policy maker for the Arlington Police Department)).  In *Bell v. City of El Paso*, this Court noted that the chief of police for the El Paso Police Department – in that case Gregory

Allen – was a policymaker.  No. EP-08-CV-331-FM, 2009 U.S. Dist. LEXIS 127084, at *29

(W.D. Tex. Dec. 18, 2009).

Lastly, a plaintiff must establish that the policy was the "moving force" behind the

violation.  That is, there must be a "direct causal link" between the policy and the violation.

*Piotrowski,* 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694).  This requires "more than a mere

'but for' coupling between cause and effect."  *Fraire*, 957 F.2d at 1281 (5th Cir. 1992) (citations

omitted).  The Fifth Circuit has emphasized that the moving-force element of municipal liability

"must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability

and causation, municipal liability collapses into respondeat superior liability.'"  *Snyder v.*

*Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v.*

*Brown*, 520 U.S. 397, 415 (1997)).  But if a policy is found to have a "known or obvious"

consequence of infringing on federally protected rights in the first step of the test (which may be

found in failure to train cases), it is difficult to see how such a policy could fail to be a "moving

force" behind these known or obvious harms when they finally come to fruition, as is required by

this third step.  *See Bryan Cnty.*, 520 U.S. 409-10 ("The high degree of predictability may also

support an inference of causation – that the municipality's indifference led directly to the very

consequence that was so predictable.").

### 2.     Applying the elements to the instant case

Plaintiffs do not allege that there is a policy of excessive force that has been officially

adopted and promulgated by a policymaker.  Rather, Plaintiffs allege that there is a persistent,

widespread practice of excessive force by El Paso Police Department officers which, although not

authorized by officially adopted and promulgated policy, is so common and well-settled as to

constitute a custom that fairly represents municipal policy.  Pls.' Compl. ¶ 47.  Plaintiffs also

allege that the inadequacy of existing training for police officers is so likely to result in the violation of constitutional rights that the City's failure to train its employees evidences a policy of "deliberate indifference" to the rights of its inhabitants.  Pls.' Compl. ¶ 46.

### a.      Policy, custom or widespread practice

"Since *Monell*, the lower federal courts have struggled with the difficult task of determining just what is sufficient to state a claim for relief under the standard for municipal liability set forth in that case consistent with the liberal boundaries of federal notice pleading." *Hamrick v. Lewis*, 515 F. Supp. 983, 985 (N.D. Ill. 1981).  "While it is unnecessary to show formal, documentary approval of a governmental custom or policy in order to state a claim under *Monell*, it is necessary to allege more than a single incident of illegality . . . in order to state a claim for relief."   *Hamrick*, 515 F. Supp. at 985-86.  Plaintiffs must demonstrate "a pattern of abuses that transcends the error made in a single case."  *Piotrowski*, 237 F.3d at 582 (citation omitted).  A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances."  *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (citations omitted).  A pattern also requires similarity and specificity, as "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

Here, Plaintiffs allege thirty-two prior incidents, spanning fifteen years, in which El Paso Police Department officers allegedly made use of excessive deadly force.  Pls.' Compl. ¶ 47(A)-(T).  The incidents are described in varying degrees of detail, with some described in a few sentences and some simply listed with a date and police report number.  *Id*.  For example, the description of the death of Craig Chamness includes the following details:  his death came "after being held down after allegedly attacking paramedics in the front yard of his mother's house;"

that he was a "paranoid schizophrenic;" that he died of "possible asphyxia" from being "held in a position where [he] couldn't breathe;" that, after this incident, the City "assured the public that it would train its officers in handling these types of cases;" and that a suit was filed against the City and various police officers in federal court.  Pls.' Compl. ¶ 47(C).  Other incidents provide only dates and report numbers and are described with little context.  For example, one incident description reads:  "On November 15, 1998, . . . El Paso Police Department Officer shot and killed a drive-by shooting suspect."  Pls.' Compl. ¶ 47(P).  Fourteen incident descriptions say even less.  *See* Pls.' Compl. ¶ 47(S)(1)-(14).

Viewing the pleadings as a whole, Plaintiffs have alleged sufficient prior incidents to defeat Defendant's motion to dismiss.  Other district courts, in analogous cases at the motion to dismiss stage, found the recitation of a list of similar prior incidents to be sufficient.  *See Barr v. City of San Antonio*, No. 06-CV-261, 2006 U.S. Dist. LEXIS 59402, at *12 (W.D. Tex. July 25, 2006) (finding that a pattern was alleged by citing four prior similar lawsuits over unlawful arrests and use of excessive force); *Rivera v. City of San Antonio*, No. 06-CV-235, 2006 U.S. Dist LEXIS 83376, at *39 (W.D. Tex. Nov. 15, 2006) (finding that a pattern was alleged by citing that the police department had received hundreds of complaints involving the use of excessive force by officers);  *Starstead v. City of Superior*, 533 F. Supp 1365, 1369 (W.D. Wis. 1982) (finding that a pattern was alleged by describing a systematic pattern of misuse of police dogs and citing five separate incidents involving seven persons).  This case, in which thirty-two incidents of excessive deadly force have been alleged, falls within the acceptable range of "sufficiently numerous prior incidents" needed to allege a pattern at this stage.

The Court notes that the procedural posture of this case is distinguishable from much of the case law on establishing a pattern.  Discovery has not occurred in this case, whereas many

decisions on this subject concern post-discovery motions. *See, e.g.*, *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) (appeal of summary judgment); *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) (same). The Fifth Circuit held in *Peterson* and *Pineda* that twenty-seven incidents of excessive force and eleven incidents of warrantless entry, respectively, were not enough to establish a pattern sufficient to defeat a summary judgment motion. *Id*. Those cases discussed and evaluated the evidence in detail and observed that, even after discovery, plaintiffs had no evidence of a pattern beyond a bare list of prior incidents. *See Peterson*, 588 F.3d at 851 ("The incidents allege use of force that, if true, would be emphatically excessive. Nevertheless, assuming their truth, the incidents do not, on the basis of this record, tell us that the City maintained an official policy of condoning excessive force. The failure of the evidence is that the plaintiffs have failed to provide context that would show a pattern of establishing a municipal policy."). In contrast, at this juncture, the Court "must only evaluate whether Plaintiff[s] . . . pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Ramirez v. Jim Wells County*, No. CC-09-CV-209, 2010 U.S. Dist. LEXIS 63615, at *6 (S.D. Tex. June 25, 2010) (ruling on a motion to dismiss). Plaintiffs have pleaded sufficient facts to survive the motion to dismiss stage, as the pleadings allow the Court to draw the reasonable inference that Defendants have engaged in a pattern of misconduct.

Plaintiffs must also plead similarity; numerous incidents must not be for any and all prior bad acts, but only similar bad acts. Defendants argue that Plaintiffs have "failed to demonstrate the similarity between the previous cases and the one at issue here." City's Mot. ¶ 11. The Court disagrees. Although the detail with which Plaintiffs describe the incidents used to establish a pattern of use of excessive deadly force varies – three are described with significant detail, fifteen

are described with some detail and fourteen are listed with virtually no detail – the similarities revealed by the numerous incidents alleged with some detail are sufficient to withstand a motion to dismiss.  In *Rivera*, the plaintiffs alleged that the internal affairs section of the San Antonio Police Department had received hundreds of complaints involving the use of excessive force by police officers, but did not indicate the time period in which the complaints were received or what type of police misconduct was involved; nevertheless, the court found that plaintiffs had alleged sufficient facts. *Rivera*, 2006 U.S. Dist LEXIS 83376, at *39-40 & n.8.  In *Barr*, the plaintiffs alleged that the city had been named as a defendant in four similar lawsuits in the Western District of Texas, but they did not provide a list of such federal cases; again, the court held that sufficient facts had been alleged to survive a motion to dismiss.  *Barr*,  2006 U.S. Dist. LEXIS 59402, at *12-13 & n.3.  Plaintiffs here have alleged at least as much detail as the plaintiffs in either *Rivera* or *Barr*, and the prior incidents alleged here are sufficiently similar to the current incident to count as a pattern.  The key common element, made sufficiently clear in the pleadings, is the alleged repeated use of excessive deadly force, often with fatal results.  Thus, Plaintiffs have alleged a custom or widespread practice in sufficient detail, similar enough in nature to the alleged facts underlying the instant suit, to allow their pleadings to withstand the City's motion to dismiss.

### b.     Failure to train

Plaintiffs allege that Wiles, Allen and the City failed to properly train or supervise Mayorga and Moreno in the use of deadly force.  Pls.' Compl. ¶ 46.  They further allege that the City has a "custom, policy and practice of insufficiently and inadequately training officers in the proper use of deadly force." Pls.' Compl. ¶ 47.  They argue that this failure to train and supervise

amounted to gross negligence or deliberate indifference.  Pls.' Compl. ¶ 46.  The City argues that

Plaintiffs fail to adequately allege any facts showing deliberate indifference. City's Mot. ¶ 11.

_____ "It is clear that a municipality's policy of failing to train its police officers can give rise to

§ 1983 liability." *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 457 (5th Cir. 2000) (subsequent

appeal after remand of *Bryan Cnty.*, 520 U.S. 397) (holding that a sheriff's failure to train a

county deputy that resulted in constitutional violation could be county policy).  Indeed, "the

failure to provide proper training may fairly be said to represent a policy for which the city is

responsible, and for which the city may be held liable if it actually causes injury."  *Id.* (quoting

*City of Canton*, 489 U.S. at 390).  Deliberate indifference is a key component of a failure to train

claim, as a failure to train claim supports § 1983 liability "only where the failure to train amounts

to a deliberate indifference to the rights of the persons whom the [officers] come into contact."

*City of Canton*, 489 U.S. at 388.  If, in light of the duties assigned to specific officers, the need

for more or different training is so likely to result in the violation of constitutional rights, the

policymakers of a city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390.  For liability to attach in this circumstance, the identified deficiency in a city's training

program must be closely related to the ultimate injury.  *Id.* at 391.

        In a § 1983 claim for failure to train or supervise, the plaintiff must show that:  "(1) the

supervisor either failed to supervise or train the subordinate official; (2) a causal link exists

between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the

failure to train or supervise amounts to "deliberate indifference" to the plaintiff's constitutional

rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Smith v. Brenoettsy*,

158 F.3d 908, 912 (5th Cir. 1998)).  To establish deliberate indifference, "a plaintiff usually must

demonstrate a pattern of violations and that the inadequacy of the training is obvious and

obviously likely to result in a constitutional violation." *Id.* (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).  Proof of deliberate indifference generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).  Deliberate indifference of this type is a more stringent standard than simple or even heightened negligence. *Piotrowski*, 237 F.3d at 579 (citing *Bryan Cnty.*, 520 U.S. at 407).

As stated above, Plaintiffs allege that Wiles, Allen and the City failed to train or supervise officers Mayorga and Moreno in the proper use of deadly force.  Pls.' Compl. ¶ 46.  Plaintiffs also allege that this failure to train was widespread and involved all El Paso Police Department officers.  Pls.' Compl. ¶ 47.  Plaintiffs allege that a "direct causal connection existed between [Wiles, Allen, and the City's] failure to supervise and/or train officers Mayorga and Moreno and the violation of Decedent's rights."  Pls.' Compl. ¶ 46.  As discussed above, Plaintiffs provide a list of thirty-two incidents of officers using allegedly excessive deadly force which support an inference that the City of failed to train its officers in the proper use of deadly force, and that this failure to train perpetuated the pattern.  Taken as true, this credibly demonstrates deliberate indifference to the rights of the public, including Martinez.

Even with the higher pleading standards of *Twombly* Plaintiffs have alleged sufficient prior incidents to defeat Defendant's motion.  *See* 550 U.S. at 555.  Again, much of the case law on establishing a pattern for failure to train resolve motions for summary judgment and "[t]his case has obviously not progressed to that stage." *Greenwood v. City of Yoakum*, No. V-07-CV-78, 2008 U.S. Dist. LEXIS 82742, at *12-13 (S.D. Tex. Oct. 17, 2008).  In *Greenwood*, at the motion to dismiss stage, the court described the allegations as "somewhat broad" but held that the

allegations were sufficient to allow the failure to train or supervise claim to proceed.  *Id.* at *12.

The court further held that "[a]t the least, Greenwood's assertions entitle[d] him to discovery."

*Id.* at *13.  Here, where Plaintiffs' allegations are asserted with some level of detail, Plaintiffs

should also at least be entitled to discovery – "dismissal is not appropriate when evidence may be

adduced showing that a police officer has received no or inadequate training."  *Barr*, 2006 U.S.

Dist. LEXIS 59402, at *14.

        **c.**      **Promulgated by the official policymaker**

      A policy is promulgated by the municipal policymaker when it "results from the decision

or acquiescence of the municipal officer or body with 'final policymaking authority' over the

subject matter of the offending policy."  *Jett*, 491 U.S. at 737.  "Courts have consistently found

that chiefs of police are official law enforcement policymakers for the purposes of municipal

liability under § 1983."  *Kincheloe,* 2009 U.S. Dist. LEXIS 96371, at *56.  Plaintiffs must

demonstrate that the final policymaking official for the municipality had actual or constructive

knowledge of the policy.  *Webster*, 735 F.2d at 842.  The Fifth Circuit has held that "[a]ctual

knowledge may be shown by such means as discussions at council meetings or receipt of written

information.  Constructive knowledge may be attributed to the governing body on the ground that

it would have known of the violations if it had properly exercised its responsibilities, as, for

example, where the violations were so persistent and widespread that they were the subject of

prolonged public discussion or of a high degree of publicity."  *Bennett v. City of Slidell*, 728 F.2d

762, 768 (5th Cir. 1984) (en banc).

      Plaintiffs do not allege that the policymakers for the City, or that Wiles or Allen as the

official law enforcement policymakers, had actual knowledge of the pattern of the use of

excessive deadly force.  Instead, they imply that the pattern of El Paso Police Department officers

using excessive deadly force was widespread and persistent enough to impute constructive knowledge to the policymakers.[2]

Sufficiently numerous prior incidents of official misconduct may tend to prove the existence of a policy and acceptance of that policy by policymakers. *Gonzalez v. Westbrook*, 118 F. Supp. 2d 728, 734 (W.D. Tex. 2000). Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842. "Where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Id*.

There is no bright line rule for determining when a number of incidents taken together comprise a pattern of conduct serious enough to impute constructive knowledge to municipal policymakers. *Pineda*, 124 F. Supp. 2d at 1077. However, incidents cited by Plaintiffs appear to have occurred for so long and are sufficiently numerous that they tend to show the existence of a custom and knowledge and acceptance of that custom by policymakers. In *Pineda*, eleven incidents of warrantless searches were held not to be widespread enough to impute constructive knowledge to policymakers; however in *Escobar v. City of Houston*, twenty-six incidents of accidental gun discharges were found to be sufficient to create a fact issue regarding the City's knowledge of the need for additional training. *Pineda*, 124 F. Supp. 2d at 330; *Escobar v. City of Houston*, No. 04-1945, 2007 U.S. Dist. LEXIS 72706, at *118-19 (S.D. Tex. Sept. 29, 2007). *Escobar*, at the summary judgment phase, uses fewer incidents than in the present case. Thus, at

---

[2]     Neither Plaintiffs nor Defendants discuss this element of a § 1983 claim in their 12(b)(6) briefs.

-15-

the motion to dismiss stage, thirty-two incidents appear to be sufficiently numerous to infer knowledge of that custom by policymakers.  Additionally, excessive use of deadly force can be described as flagrant or severe, which reduces the frequency and pattern length needed to establish constructive knowledge.  The Court thus finds that the pleadings properly allege that the City, Wiles and Allen had constructive knowledge of the policy.

> **d.    Moving force behind the violation**

The City next argues that Plaintiffs fail to address how any city policy or custom directly caused the deprivation of Plaintiffs' constitutional rights.  City's Mot. ¶¶ 10, 11.  Plaintiffs allege that there was a "direct causal connection" between Wiles, Allen, and the City's failure to supervise and train officers Mayorga and Moreno and the violation of Martinez's constitutional rights.  Pls.' Compl. ¶ 46.  Plaintiffs further allege that the officers' unconstitutional actions were directed, encouraged and allowed by the policymakers.  Pls.' Compl. ¶ 53.  Plaintiffs allege that there were customs of tolerating excessive force and using unnecessarily aggressive tactics, creating situations where officers are more likely to use excessive or deadly force, and then covering up violations of constitutional rights.  Pls.' Compl. ¶¶ 53(a)-(c).  Lastly, Plaintiffs allege that, for years, Defendants failed to provide training after many other shootings and that all of these policies and failures to train, supervise, and discipline were the direct and proximate cause of the deprivation of Plaintiffs' constitutional rights. Pls.' Compl. ¶¶ 58, 59.

When the facts alleged are viewed in a light most favorable to Plaintiffs, it may be inferred that Mayorga and Moreno used excessive deadly force with the knowledge that no disciplinary action would be taken against them by the El Paso Police Department.  This is sufficient to allege that the City's policy was the "moving force" behind the constitutional violation.  *See Grandstaff v. City of Borger*, 767 F.2d 161, 170 (5th Cir. 1985) ("Where police

officers know at the time they act that their use of deadly force in conscious disregard of the rights and safety of innocent third parties will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied."); *see also Rivera*, 2006 U.S. Dist. LEXIS 83376, at *41.

**C.     Plaintiffs' state law claims are barred by governmental immunity**

It is unclear from Plaintiffs' Complaint if Plaintiffs assert any state law claims.  Though Plaintiffs do not list state law claims in their four causes of action, Defendants challenge any state law claims Plaintiffs' might be making.  *See generally* Pls.' Compl., *see* City's Mot. ¶¶ 12-13, Wiles & Allen Mot. ¶ 11.  The only place in the Complaint that Plaintiffs possibly make a state law claim is in paragraph eleven, under the Jurisdiction and Venue heading, when they state "[t]his is a civil rights, wrongful death/survival action," because wrongful death is a state law claim.  *See* Pl.'s Compl. ¶ 11; *see also* TEX. CIV. PRAC. & REM. CODE § 71.004.  Paragraph eleven is the statement that Defendants cite to when they address Plaintiffs' putative state law claims in their motions.  *See* City's Mot. ¶ 12, Wiles & Allen Mot. ¶ 11.  But neither Plaintiffs nor Defendants address the state law claims in their respective Response and Reply.  *See generally* Pls.' Resp. and Defs.' Reply.  So, while it appears Plaintiffs did not intend to claim any state law causes of action, the Court will address the City's arguments regarding the dismissal of any possible state law claims.  To the extent that there were any state law claims made, the City's Motion to Dismiss all state law claims is granted.[3]

Dismissal of any state law claim is appropriate because the City has governmental immunity.  As an initial matter, "in Texas[,] a governmental unit is immune from tort liability

---

[3]         Wiles and Allen's arguments in favor of dismissing any possible state law claims against them will not be addressed because both of these individuals have been dismissed from the lawsuit.

unless the Legislature has waived immunity." *Dallas Cnty. Mental Health and Mental Retardation Ctr. v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) (citing *Harris Cnty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994)); see also TEX. CIV. PRAC & REM. CODE § 101.001(3)(B) (defining "governmental unit" to include cities).  Moreover, political subdivisions and municipalities in Texas "have long enjoyed immunity from suit when performing governmental functions." *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007).  A city's exercise of its police power has long constituted a governmental function.  *See Whitfield v. Paris*, 19 S.W. 566, 567 (Tex. 1892).  While this immunity can be waived, and cities' immunity from suit has been waived by the state legislature in a few general statutes,[4] courts have consistently declined to imply waivers judicially.  *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) ("We have generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved.").  Even the Legislature has mandated that no statute should be construed to waive immunity absent "clear and unambiguous language."  TEX. GOV'T CODE § 311.034.  Plaintiffs do not claim that there has been a waiver of immunity in this case.  *See generally* Pls.' Compl.

Even if a general waiver may be read as applying in this sort of case, a city's immunity is not waived if the claim arises out of an intentional tort.  *City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. Ct. App. 1990) (citations omitted).  The Texas Tort Claims Act specifically exempts intentional torts from the waiver of immunity.  TEX. CIV. PRAC. & REM. CODE § 101.057 (The Act "does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any

---

[4]        An example of a general waiver in a statute states:  A governmental unit in the state is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

other intentional tort."). Excessive force is an intentional tort. *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008-09 (E.D. Tex. 1997) ("Plaintiffs have described their claims arising from the shooting as the intentional tort of excessive force . . .[and] it is clear that Plaintiffs' claims consist of intentional torts.); *City of San Antonio v. Dunn*, 796 S.W.2d at 261 (holding that there was no waiver of municipal immunity under the Texas Tort Claims Act where claims arose out of the intentional torts of excessive force and false arrest). Thus, with a presumption of immunity and a lack of waiver, because the City was performing a governmental function through its police department, and because the claim arose out of the intentional tort or excessive force, the City is immune from state law claims. Accordingly, any such claims that may have been made by Plaintiffs are dismissed.

## III.   CONCLUSION

Plaintiffs have sufficiently stated a claim under 42 U.S.C. §1983, but the City is immune from any state law claims. Accordingly, the City's Motion (Doc. No. 19) is **GRANTED** in part, as to any state law claims, and **DENIED** in part, as to the § 1983 claims. Additionally, the Wiles & Allen Motion (Doc. No. 22) is **DENIED** as moot.

**SO ORDERED.**

**SIGNED** on this 2nd day of September, 2010.

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE