IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LUCIA ESMERALDA OPORTO, et al., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | EP-10-CV-110-KC |
| THE CITY OF EL PASO, TEXAS, et al., | § § § § | |
| Defendants. | § § | |

## ORDER

On this day, the Court considered the "City of El Paso's Motion for Summary Judgment" ("Motion"), ECF No. 81, and "Plaintiffs' Motion for Filing their Response to Defendant City of El Paso's Motion for Summary Judgment Late" ("Plaintiffs' Motion"), ECF No. 88. For the reasons set forth below, the Court **GRANTS** the City's Motion and Plaintiffs' Motion.

I.      Plaintiff's Motion

As a preliminary matter, the Court addresses Plaintiffs' Motion and Plaintiffs' counsel's failure to follow the procedural rules. On March 2, 2012, the City of El Paso (the "City") filed its Motion for Summary Judgment. Mot. ¶ 1. On March 9, 2012, Plaintiffs' counsel requested an extension of at least thirty days to file a response. *See* Pls.' Unopposed Mot. for Extension of Time to File a Br. and Resp. to City's Mot. ¶ 18, ECF No. 84. The Court granted that extension and ordered counsel to file a response on or before April 11, 2012. Text Order, March 12, 2012. Plaintiffs' counsel then missed that deadline by twelve days, and filed "Plaintiffs' Response to Defendant City of El Paso's Motion for Summary Judgment" ("Response"), ECF No. 89, on April 23, 2012. Resp. ¶ 1.

That same day, counsel also filed Plaintiffs' Motion requesting an extension of time to excuse the tardiness. Pls.' Mot. ¶ 8. Despite the fact that the local rules require counsel to confer with opposing counsel before filing a non-dispositive motion, Plaintiffs' counsel did not follow the rule because he suspected that the City would oppose the extension. *See id.* ¶ 6; Local Rule CV-7(i). Contrary to counsel's suspicions, the City has not opposed the extension.

In addition to filing the Response late, Plaintiffs' counsel also failed to properly respond to the City's Proposed Undisputed Facts. According to the Standing Order applicable in this case, counsel must specifically cite to evidence when the party wishes to deny the opposing party's proposed facts. Standing Order Governing Mots. for Summ. J. ¶ 3 (W.D. Tex. Jan. 5, 2011) (J. Cardone). Similarly, Rule 56 of the Federal Rules of Civil Procedure requires a party "asserting that a fact cannot be or is genuinely disputed must support the assertion" with specific citations to admissible evidence. *See* Fed. R. Civ. P. 56(c)(1). Here, Plaintiffs' counsel stated several times that the City's statement is "contrary to the evidence," but then failed to cite to any evidence. Resp. Ex. A ("Plaintiffs' Facts") ¶¶ a-a, c, ECF No. 89-2. And the one time Plaintiffs' counsel did cite to evidence, counsel failed to include a specific citation with a page or paragraph number. *Id.* ¶ b. The failure of Plaintiff's counsel to cite to specific evidence in the opposition to the City's facts violates the Court's Standing Order and Rule 56.

Finally, Plaintiffs' counsel failed to sufficiently cite to evidence in the argument section of the Response. Resp. ¶¶ 18-23. As stated above, Rule 56 requires a party "asserting that a fact cannot be or is genuinely disputed must support the assertion" with specific citations to admissible evidence. *See* Fed. R. Civ. P. 56(c)(1), (3). Although Plaintiffs' counsel cited to evidence in the facts section of the Response, counsel largely failed to include citations to

evidence in his arguments despite making several factual assertions. *See* Resp. ¶¶ 3, 18-23; *but see id.* ¶ 19(d). Thus, once again, Plaintiffs' counsel has not followed the governing rules.

Despite counsel's multiple failures, the Court grants Plaintiffs' Motion to file their response late. The Court overlooks the violations this time because summary judgment in favor of the City is appropriate regardless of counsel's procedural mistakes. However, counsel would be well advised to follow the rules in the future.

## II.     BACKGROUND

Turning now to the facts of this case, on March 29, 2008, Officers Edwin Mayorga ("Officer Mayorga") and Rodolfo Moreno ("Officer Moreno") (collectively "Officers") of the El Paso Police Department ("EPPD") set up an undercover surveillance across the street from a 7-11 convenience store. Mot. Ex. A ("City's Facts") ¶ 1, ECF No. 81-2. The Officers were not in uniform and were driving an unmarked EPPD car. *Id.* While surveying the 7-11, the Officers noticed a fight between two individuals a short distance away. *Id.* ¶ 2; Resp. ¶ 3. After driving by the fight, the Officers chose not to investigate and returned to their position by the 7-11. City's Facts ¶ 3; *see* Resp. ¶ 3. The Officers then noticed a dark colored sport utility vehicle ("SUV") parked illegally in the street near the scene of the fight. *See* City's Facts ¶ 3; Resp. ¶ 3. Given the peculiar sequence of events, the Officers decided to again leave their surveillance post and investigate the illegally parked SUV. *See* City's Facts ¶¶ 3-4; Resp. ¶ 3.

After the Officers drove past the SUV, the Officers heard a gunshot and saw a man, with his right arm extended as if he was holding a gun, chasing another individual into Lucky's Grocery Store. City's Facts ¶ 4. The Officers exited their vehicles and entered Lucky's Grocery Store. *Id.* ¶ 5; Resp. Ex. 4 ("Oporto's Affidavit") ¶ 6, ECF No. 89-7.

Plaintiffs and the City disagree on what happened after the Officers entered the store. According to the City, the Officers entered the store and noticed shattered glass and blood on the floor. City's Facts ¶ 5. Moments later, the Officers saw John Dalton Martinez ("Martinez") holding a gun. *See id.* After identifying themselves as police officers and ordering Martinez to drop the weapon, Martinez began to turn toward Officer Mayorga with his gun held at the "high ready." *See id.* The Officers then fired seven shots, killing Martinez. *See id.*

In contrast, Plaintiffs present evidence that Martinez did not have a gun when the Officers shot him. Oporto's Aff. ¶¶ 6, 11. Martinez's widow, Lucia Oporto ("Oporto"), witnessed the shooting and states in her affidavit that Martinez did not have a gun in the store. *Id.* ¶¶ 6, 11. Moreover, Oporto states that she did not see a gun on the ground after the shooting. *Id.* ¶ 11.

After the shooting, the Chief of EPPD, Gregory Allen ("Chief Allen"), reviewed the actions of the Officers. Resp. Ex. 2 ("Chief Allen's Affidavit"), at 6-8, ECF No. 89-5. In a sworn affidavit, Chief Allen made findings of fact that largely mirror the City's version stated above. *Id.* Critically, Chief Allen found that Martinez refused to drop his gun, and then turned toward the Officers with his gun in a "high ready" position. *Id.* at 7. Chief Allen then stated that the Officers shot Martinez in fear for their own lives. *Id.* Based on those facts, Chief Allen concluded that the Officers' actions were in accordance with the EPPD's policies, Texas law, and the United States Constitution. *Id.* at 6, 8.

On March 24, 2010, Plaintiffs filed suit against the City and the Officers under 42 U.S.C. § 1983, claiming violations of the Fourth and Fourteenth Amendments of the United States Constitution. *See* Compl. and Jury Demand 9-19 ("Complaint"), ECF No. 1.

On May 3, 2010, the City filed a motion to dismiss arguing that the Plaintiffs had failed to

state a § 1983 claim against the City. Def. City of El Paso's Mot. to Dismiss ¶¶ 9-11, ECF No. 19. On September 2, 2010, the Court denied the City's motion and held that Plaintiffs had adequately pleaded a § 1983 claim against the City. *Oporto v. City of El Paso*, No. EP–10–CV–110–KC, 2010 WL 3503457, at *5-6, *11 (W.D. Tex. Sept. 2, 2010).

On June 1, 2010, the Officers filed a motion for summary judgment based on qualified immunity. Officers' Mot. for Summ J. ¶ 6, ECF No. 25. The Court denied their Motion on January 9, 2011, holding that there was a dispute of material fact regarding whether Martinez was holding a gun that he refused to drop. *See* Order 10-11, ECF No. 62. The Officers appealed to the Fifth Circuit, and the Fifth Circuit affirmed this Court on November 9, 2011. United States Ct. of Appeals for the Fifth Circuit J. 6, ECF No. 76.

On March 2, 2012, the City filed this Motion seeking summary judgment. Mot. ¶ 1.

### III. DISCUSSION

#### A. Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B. The City's Motion for Summary Judgment

In its Motion, the City argues that Plaintiffs' claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments cannot survive summary judgment. Mot. ¶ 5. The Court first examines Plaintiffs' § 1983 claims for alleged violations of the Fourth Amendment, and then examines Plaintiffs' Fourteenth Amendment claim.

#### 1. Fourth Amendment claims

The City argues that Plaintiffs cannot establish municipal liability under § 1983 because Plaintiffs have no evidence of a policy, custom, or pattern sufficient to state a § 1983 claim against the City. Mot. ¶¶ 11-12. In response, Plaintiffs argue they have sufficient evidence to defeat summary judgment based on three theories of municipal liability. First, Plaintiffs argue that the EPPD has "custom, policy or practice of using excessive force during the course of an arrest or investigatory stop." Resp. ¶ 18. Second, Plaintiffs argue that EPPD's policy of giving officers discretion to investigate violations of the law caused the unconstitutional killing of Martinez. Resp. ¶ 19. And third, Plaintiffs argue that Chief Allen's ratification of the Officers' conduct establishes the City's liability. Resp. ¶ 23. After setting out the general principles of municipal liability under § 1983, the Court examines each of Plaintiffs' theories in turn.

To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). It is well established that a municipality cannot be liable under § 1983 on the theory of respondeat superior. *Id*. (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Municipalities face § 1983 liability only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 695.

### a. Custom, policy or practice of using excessive force

Plaintiffs argue that the City faces liability under § 1983 because EPPD has an informal "custom, policy or practice of using excessive force during the course of an arrest or investigatory stop." Resp. ¶ 18. The City responds that Plaintiffs do not have evidence to support their allegations that EPPD has a policy, practice, or custom of using excessive force. Reply ¶ 4.

A municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. The text and purposes of § 1983 mandate this result. Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, *custom, or usage*, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable." 42 U.S.C. § 1983 (emphasis added). And "Congress included customs and usages within its definition of law in § 1983 because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).

To establish a custom, the plaintiff must show a pattern of misconduct: "actions that have

occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010); *Webster v. City of Hous.*, 735 F.2d 838, 853 (5th Cir. 1984), *rev'd en banc on other grounds*, 739 F.2d 993, 993-94 (5th Cir. 1984) ("A persistent, widespread practice of city officials or employees, which, . . . is so common and well settled as to constitute a custom that fairly represents municipal policy."). To qualify as a pattern, the individual incidents must be sufficiently similar to one another. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts.").

Here, Plaintiffs have submitted no evidence of a pattern. Plaintiffs alleged in their Complaint thirty-two prior incidents, spanning fifteen years, in which EPPD officers allegedly used excessive deadly force. Compl. ¶ 47(A)-(T). Additionally, Plaintiffs argue that in 2004 alone, EPPD received 104 excessive force complaints. Resp. ¶ 18. However, Plaintiffs failed to provide any evidence to substantiate these allegations. Without evidence, Plaintiffs' theory of a pattern of excessive force cannot survive summary judgment. *See Little*, 37 F.3d at 1075 ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.").

It is true that the Court previously held that these allegations of excessive force incidents were sufficient to allow Plaintiffs' *Monell* claim to survive a motion to dismiss. *Oporto*, 2010 WL 3503457, at *5-6. But the Court premised its holding on the standard for a motion to dismiss, and noted that the standards are different on summary judgment. *Id.* at *6. The Court explained that in *Peterson v. City of Fort Worth* and *Pineda v. City of Houston,* the Fifth Circuit

required the plaintiffs produce evidence of a pattern "beyond a bare list of prior incidents" to survive summary judgment. *Id.* (discussing *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) and *Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002)).

The Fifth Circuit requires more than a list to ensure the fact finder has the necessary context to glean a pattern. *Peterson*, 588 F.3d at 851-52. For example, the number of incidents is only relevant in context with the "department's size or the number of its arrests." *See id.* at 851. Likewise, the incidents must be sufficiently similar to warrant an inference of a pattern. *See Snow v. City of El Paso*, 501 F. Supp. 2d 826, 833 (W.D. Tex. 2006).

Despite the Court's warning, Plaintiffs again rely on the "bare list of prior incidents." *See* Resp. 1; Compl. ¶ 47(A)-(T). And Plaintiffs fail to provide the Court with the necessary context: there is no evidence about the department's size, number of arrests, or whether these prior incidents were similar to the incident at issue in this case. *See Peterson*, 588 F.3d at 851. The Court is not breaking new ground here. Plaintiffs' counsel made the same argument, that the 104 excessive force complaints in 2004 showed a pattern of excessive force, in another case in this district. *See Snow*, 501 F. Supp. 2d at 833. The court granted the City of El Paso's motion for summary judgment in that case because "Plaintiff fail[ed] to place the 104 complaints in any relevant context from which the Court could conclude that the City knowingly maintained any widespread custom." *See id.*

In conclusion, the Court holds that Plaintiffs present no evidence to establish a custom of excessive force at EPPD, and thus this alleged policy cannot sustain Plaintiffs' § 1983 claims against the City.

### b. Officer discretion

Plaintiffs present evidence that EPPD has a policy of giving officer's discretion to investigate violations of the law. *See* Resp. ¶ 19; Chief Allen's Aff. 8; Resp. Ex. 3 ("Officer Moreno's Deposition") 53:16-19, ECF No. 89-3. Plaintiffs' argument for municipal liability based on this policy of discretion is not entirely clear, but it appears to rely on the sequence of events. *See* Resp. ¶ 19. According to Plaintiffs, if EPPD's policy mandated that the Officers investigate either the fight or the illegally parked SUV, the sequence of events leading up to the encounter would have been altered, and the Officers would have never shot Martinez. *See id.* The City does not respond to this argument.

As stated above, Plaintiffs must prove (1) an official policy or custom (2) promulgated by the municipal policymaker that (3) was the moving force behind the violation of a constitutional right. *See Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694). The third element — the "moving force" behind the constitutional violation — has two prongs. *See Bryan Cnty.*, 520 U.S. at 404; *Valle v. City of Hous.*, 613 F.3d 536, 547 (5th Cir. 2010). First, Plaintiffs must demonstrate that the municipality is culpable. *See Bryan Cnty.*, 520 U.S. at 404; *Piotrowski*, 237 F.3d at 579-580. Second, Plaintiffs must show a direct causal link between the policy and the constitutional violation. *See Bryan Cnty.*, 520 U.S. at 404; *Piotrowski*, 237 F.3d at 579-580.

Even assuming that Plaintiffs have sufficient evidence of the first two elements — that there is a policy of discretion that was promulgated by the City — Plaintiffs have not shown that the policy of discretion was the moving force behind the killing of Martinez because Plaintiffs have not presented evidence of either culpability or causation.

To establish culpability, the plaintiff must prove "(1) that the policy itself violated federal

11

law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers 'with 'deliberate indifference' as to its known or obvious consequences." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bryan Cnty.*, 520 U.S. at 407 and citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Piotrowski*, 237 F.3d at 579.

In *Dick v. Watonwan County*, the United States Court of Appeals for the Eighth Circuit faced a similar argument about officers' discretion. 738 F.2d 939, 943 (8th Cir. 1984). The plaintiffs in *Dick* were two parents who had been seized and imprisoned for three days in a detoxification center after their daughter repeatedly told authorities that her parents were drunks. *See id.* at 941. The daughter's allegations turned out to be entirely false. *See id*. The parents argued that the county was liable for the unlawful seizure because the county impermissibly allowed the county attorney to have discretion to rely on a fifteen-year-old's uncorroborated accusations. *See id.* at 941-42. The Eighth Circuit rejected this argument concluding that the policy did not sanction reliance on uncorroborated accusations, but rather gave county officials the necessary discretion to do their jobs. *See id.* at 942-43.

As in *Dick*, Plaintiffs here present evidence that EPPD has a policy that permits their officers to use discretion when deciding whether to investigate crimes. Resp. ¶ 19; Chief Allen's Aff. 8; Officer Moreno's Dep. 53:16-19. And like the Eight Circuit, this Court concludes that a policy of discretion is not facially unconstitutional. *See Dick*, 738 F.2d at 943; *see also Piotrowski*, 237 F.3d at 582 (assuming police have some discretion in how and when to enforce the law, and thus rejecting plaintiff's argument that the city was liable because the police should

have brought charges against her ex-boyfriend earlier). "A policy which does not 'affirmatively sanction' unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008); *Dick*, 738 F.2d at 943). The law cannot eliminate all discretion in police investigations because police officers face "many diverse fact situations," in which "the exercise of particularized judgment" is critically important. *See Dick*, 738 F.2d at 943.

Because the policy is facially lawful, Plaintiffs must show that the City maintained the policy with "deliberate indifference" to its known or obvious unconstitutional consequences to establish culpability. *See Johnson*, 379 F.3d at 309. A municipality is deliberately indifferent when the inadequacy of the policy is "so obvious," and the inadequacy is "likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390; *Moyle*, 571 F.3d at 818.

Plaintiffs present no evidence that the City maintained a policy of giving officer's discretion despite its known or obvious unconstitutional consequences. Plaintiffs are unable to argue that EPPD knew of the unconstitutional consequences because Plaintiffs do not present evidence that the policy has led to *any* constitutional violations in the past. *See Moyle*, 571 F.3d at 819 (reasoning that plaintiff needed evidence of past incidents or violations to establish notice). Likewise, Plaintiffs present no evidence that a policy of discretion is obviously "likely to result in the violation of constitutional rights." *See City of Canton*, 489 U.S. at 390; *Moyle*, 571 F.3d at 818. As stated above, the policy is not facially unconstitutional, and Plaintiffs have not presented any evidence or even an argument to suggest that giving officer's discretion obviously leads to constitutional violations. In sum, Plaintiffs have failed to present evidence that EPPD's

policy of discretion was culpable.

Plaintiffs also present a variation on their "discretion" theory in an attempt to establish culpability. In their Response, Plaintiffs argue that the policy of discretion is culpable because it does not differentiate between officers with little or no experience from experienced officers worthy of having discretion. Resp. ¶ 19(c).

Despite their creativity, Plaintiffs have not supported their argument with law or evidence. Plaintiffs have presented no authority, nor has the Court found any, to suggest a policy that gives all officers the same level of discretion despite their differing levels of experience violates federal law or authorizes the deprivation of federal rights. Given that Plaintiffs have not shown that the policy is facially unlawful, Plaintiffs would need evidence that the City maintained the policy with deliberate indifference to its known or obvious unconstitutional consequences. *See Johnson*, 379 F.3d at 509. However, Plaintiffs have submitted no evidence that this policy of discretion has led to constitutional violations in the past or that this policy is obviously likely to result in the violation of constitutional rights. For example, Plaintiffs do not present evidence that less experienced officers routinely make bad decisions that result in constitutional injuries when given discretion. That kind of evidence might indicate the City maintained the policy of discretion with deliberate indifference as to its known consequences. But Plaintiffs have not presented any such evidence.

Finally, even if Plaintiffs were able to show that EPPD's policy of discretion or EPPD's failure to differentiate between experience levels was culpable for the alleged constitutional violation, Plaintiffs have not presented evidence of causation. To establish causation, Plaintiffs must show a direct link between the policy and the constitutional violation, and that link may not

be too attenuated. *See Martinez v. California*, 444 U.S. 277, 285 (1980); *Piotrowski*, 237 F.3d at 580. "[A] mere 'but for' coupling between cause and effect" is not enough. *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

For example, the Supreme Court held in *Martinez v. California* that the California Parole Board could not be held liable for the death of a fifteen-year-old girl who had been killed by a parolee released by the board five months earlier. 444 U.S. at 281. The plaintiffs argued that had the California Parole Board not released the parolee, the girl would have never been killed. *See id.* at 283-85. The Court rejected that argument because the death was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." *Id.* at 285.

As in *Martinez*, Plaintiffs here are relying on an attenuated series of events — that the City's alleged policy affording the Officers the discretion to investigate the fight or the parking violation allowed the Officers to decide not to investigate either the fight or the parking violation, and thus in turn, this policy of discretion caused the shooting of Martinez. But the shooting of Martinez is "too remote a consequence" to establish municipal liability under § 1983. *See Martinez*, 444 U.S. at 285; *Fraire*, 957 F.2d at 1281. Further, Plaintiffs' theory that the policy of discretion caused the killing of Martinez is far-fetched, to say the least, and thus not a direct causal link. *See Piotrowski*, 237 F.3d at 580-81 (rejecting that the city's policy that allowed officers to moonlight caused the attempted murder of plaintiff because the connection between the policy and the killing was not direct).

In summary, Plaintiffs have not presented the necessary evidence to support their theory that the City maintained a policy of discretion that was the moving force behind a constitutional

injury.  Plaintiffs have not provided evidence that a policy of discretion was culpable or that the policy of discretion directly caused the death of Martinez.  Therefore, the Court holds that Plaintiffs' argument based on a policy of discretion cannot sustain their § 1983 claims against the City.

### c. Ratification

Plaintiffs' final attempt to establish municipal liability is based on the theory of ratification.  Relying on *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), Plaintiffs argue that the City is liable for the actions of the Officers because the City ratified the unconstitutional conduct of the Officers.  Resp. ¶¶ 13, 22-23.  The City again ignores Plaintiffs' argument.

In *Praprotnik*, the Supreme Court explained that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality."  485 U.S. at 127; *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001) ("[B]y adopting an employee's action as its own (what is called 'ratification'), a public employer becomes the author of the action for purposes of liability under section 1983.").  The rationale is that policymakers are liable for their unconstitutional policies, and practically speaking, there is not much difference between direction and approval.  *Gernetzke*, 274 F.3d at 469.

To establish ratification, the plaintiff must show (1) that a city policymaker (2) approved of a subordinate's decision and the unconstitutional basis for it.  *See Praprotnik*, 485 U.S. at 127; *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755-56 (5th Cir. 2009); *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).  Neither party disputes that Chief Allen is the City's policymaker for EPPD.  *See* Mot. ¶ 17; Resp. ¶ 15; *see*

*also Bell v. City of El Paso*, No. EP-08-CV-331-FM, 2009 WL 6371618, at *11 (W.D. Tex. Dec. 18, 2009) ("The EPPD Procedures Manual states that the 'CHIEF OF POLICE is the chief administrative officer of the Police Department and is the final authority on all matters of policy, operations, and discipline.'"). Thus, the critical issue is whether Chief Allen approved of the Officers' actions and the unconstitutional basis for their actions.

Plaintiffs contend that Chief Allen approved of the Officers' conduct because he stated in an affidavit that the Officers' actions were in accordance with the EPPD's policies, Texas law, and the United States Constitution. *See* Resp. ¶ 23; Chief Allen's Aff. 6, 8. However, this does not qualify as ratification for the purposes of § 1983 liability because Chief Allen did not ratify an unconstitutional basis for the Officer's actions. *See* Chief Allen's Aff. 6, 8; *Praprotnik*, 485 U.S. at 127; *Matthews*, 294 F.3d at 1297; *see also World Wide St. Preachers Fellowship*, 591 F.3d at 756 (rejecting § 1983 liability based on a ratification theory because the town's letter approving of the officer's conduct referenced laws that supported the city's position). According to Chief Allen, the Officers only shot Martinez after Martinez refused to drop his gun and then turned toward the Officers with his gun in a "high ready" position. Chief Allen's Aff. 7. Neither side appears to dispute that this would be constitutional conduct by the Officers. *See* Compl. ¶ 31. After all, "[t]he use of deadly force is constitutional when the suspect poses a threat of serious physical harm to the officer or others." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Thus, Chief Allen did not ratify an "unconstitutional basis" for the shooting, but rather approved of a constitutional basis for the shooting.

If Chief Allen had relied on Plaintiffs' version of the facts — namely, that Martinez was

unarmed and not dangerous — and then approved of the Officers' shooting, the ratification theory could be successful. But that is not what Chief Allen did. *See* Chief Allen's Aff. 6, 8.

The Court stresses that it is not adopting Chief Allen's version of the facts; Plaintiffs' version may be true. But there is no factual dispute that Chief Allen's affidavit approves of the conduct based on a premise that Martinez had a gun and turned toward the Officers. *Id.* at 6-8. Even if the jury ultimately decides that the Officers shot an unarmed Martinez, then Chief Allen made a mistake of fact, but still did not ratify an unconstitutional basis for the shooting. *See Matthews*, 294 F.3d at 1297 ("The final policymaker, however, must ratify not only the decision itself, *but also the unconstitutional basis* for it" (emphasis added)); Restatement (Third) of Agency § 4.06 (2006) ("A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor."); George M. Weaver, *Ratification as an Exception to the § 1983 Causation Requirement: Plaintiff's Opportunity or Illusion?*, 89 Neb. L. Rev. 358, 386 (2010) (noting that "a city that clears a complaint against a police officer who used excessive force might avoid ratification if the officer lied about his conduct").

In conclusion, the Court holds that Plaintiffs cannot rely on a ratification theory to support their § 1983 claims against the City because Chief Allen did not approve of any unconstitutional basis for the shooting of Martinez.[1]

---

[1] In their Response, Plaintiffs suggest that the City is liable for the actions of the Officers because EPPD's internal affairs division, crimes against persons division, and the shooting team determined that the Officers' actions were appropriate. *See* Resp. ¶ 22. However, this argument fails because Plaintiffs have not presented evidence to substantiate these claims. Moreover, there is no suggestion that the internal affairs division, crimes against persons division, or the shooting team are final policymakers for the City. *See id.* ¶ 15 ("Chief of Police Gregory Allen is the responsible policymaker concerning the amount of

### d. Conclusion

In summary, Plaintiffs' § 1983 claims against the City for violations of the Fourth Amendment cannot survive summary judgment because none of Plaintiffs' theories for municipal liability hold water. First, Plaintiffs failed to present evidence to establish a custom of excessive force at EPPD. Similarly, Plaintiffs have not presented evidence to support their theory that the City maintained an unconstitutional policy of officer discretion that caused the shooting of Martinez. And finally, Plaintiffs cannot rely on a ratification theory because Chief Allen did not approve of any unconstitutional basis for the shooting of Martinez. Therefore, the Court holds that Plaintiffs' § 1983 claims against the City for violations of the Fourth Amendment fail as a matter of law and summary judgment is appropriate.

### 2. Fourteenth Amendment claim

In their Complaint, Plaintiffs appear to plead a claim for a violation of their Fourteenth Amendment right to equal protection and due process that is distinct from Plaintiffs' Fourth Amendment claims. *See* Compl. ¶ 41(d)-(f). The City argues that Plaintiffs have not pleaded sufficient facts, nor provided evidence, of a violation of equal protection or due process. Mot. ¶ 10. Plaintiffs did not respond to the City's argument.

In this case, Plaintiffs do not present any facts in their Complaint or in their Response to support a claim under the Fourteenth Amendment that is distinct from their Fourth Amendment claims. This is insufficient to survive a motion to dismiss, let alone a motion for summary

---

force used by the El Paso Police Department."); *Praprotnik*, 485 U.S. at 127 ("If the *authorized policymakers* approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." (emphasis added)).

judgment. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining the standard on a motion to dismiss); *See Little*, 37 F.3d at 1075 (holding that on summary judgment "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."). Therefore, the Court holds that Plaintiffs' Fourteenth Amendment claim cannot survive summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion, ECF No. 88, **GRANTS** the City's Motion, ECF No. 81, and **DISMISSES** the City as a defendant in this case.

**SO ORDERED**.

**SIGNED** on this 14th day of June, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE